IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMARIS HOLLIS,             :
                                  :
     Plaintiff,         :
                                  :
vs.                        :
                                :     CIVIL ACTION 15-0270-M
CAROLYN W. COLVIN,        :
Social Security Commissioner,  :
                                :
     Defendant.         :

<u>MEMORANDUM OPINION AND ORDER</u>

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 18).  Oral argument was waived in this action (Doc. 19).  After considering the administrative record, the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further administrative procedures not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was twenty-two years old, had received a high school occupational diploma (Tr. 42, 204), and had no relevant previous work experience (Tr. 31). Plaintiff alleges disability due to mild mental retardation, anxiety disorder, dysthymic disorder, major depressive disorder, panic disorder, and Attention Deficit Hyperactivity Disorder (hereinafter *ADHD*) (Doc. 11).

The Plaintiff protectively applied for SSI on August 3, 2011, asserting an onset date of August 3, 2011 (Tr. 18, 151-56). An Administrative Law Judge (ALJ) denied benefits, determining that Hollis had the ability to perform specific light work jobs (Tr. 18-33). Plaintiff requested review of the hearing decision (Tr. 8-14), but the Appeals Council denied it (Tr. 1-5).

2

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Hollis alleges that:  (1) The ALJ improperly considered the opinions and conclusions of the examining psychologists; and (2) she meets the requirements of Listing 12.05C (Doc. 12, 15).  Defendant has responded to—and denies—these claims (Doc. 13).  The relevant evidence of record follows.[1]

On June 3, 2002, Clare Ward, M.Ed. evaluated Hollis because of academic and attention problems; she was eleven years and ten months old at the time (Tr. 312-15).  On the Wechsler Intelligence Scale for Children, Third Edition (hereinafter *WISC-III*), Plaintiff scored a verbal IQ of 70 and a performance IQ of 50.  The Examiner's interpretation of this test was as follows:

> Her verbal reasoning abilities are much better developed than her nonverbal reasoning abilities.  Making sense of complex verbal information and using verbal abilities to solve novel problems are a relative strength for Jamaris.  Processing complex visual information by forming spatial images of part-whole relationships and/or by manipulating the parts to solve novel problems without using words is a weakness.  Her verbal reasoning abilities are in the borderline range and above those of approximately 2% of her peers [].  Her nonverbal reasoning abilities are in the intellectually deficient range and better

---

[1]As Plaintiff's claims focus on her mental impairments, the Court will not herein summarize those records relating to physical ones.

than those of approximately 1% of her peers.

(Tr. 312).  On the Wechsler Individual Achievement Test, Second Edition (hereinafter *WIAT-II*), Hollis scored 72 on reading, 68 on mathematics, 74 on oral language, and 57 in written language.

On September 15, 2004, fourteen-year-old Plaintiff was seen by Psychologist Richard S. Reynolds and David D. Hall, D.O., for talking to herself, frequent anger outbursts, and being impulsive and quite slow at school; she was taking Metadate[2] and Vistaril[3] (Tr. 317-19).  On examination, Hollis was alert and oriented in all spheres; affect was mildly blunted.  Thought associations were tight; it was noted that she put words in the wrong order when speaking.  Recent memory was intact while remote memory was poor; judgment was adequate while insight was very shallow.  Plaintiff was diagnosed to have:  (1) ADHD, by history; and (2) rule out mild range of mental retardation.

On May 28, 2008, Hollis was admitted to Hill Crest Hospital for refusing to go to school and pulling a knife on her mother; she had been staying out late, displaying inappropriate behavior, and was thought to be using drugs and alcohol (Tr.

---

[2]*Metadate* is a central nervous system stimulant used in the treatment of ADHD.  *Physician's Desk Reference* 3261-64 (62nd ed. 2008).
[3]*Vistaril* is used to treat anxiety and tension and may be used to control nausea and vomiting.  http://www.drugs.com/vistaril.html

277-86).  Plaintiff was taking Metadate and Abilify.[4]  On

examination, she was oriented in four spheres; her estimated

intelligence was average to slightly below average.  Thought

processes were logical, but she lacked insight and minimized her

behavior. Plaintiff was admitted to the adolescent unit for

approximately two weeks and prescribed Ativan[5] as needed.  A

physical exam was "grossly within normal limits" (Tr. 286).

During her hospitalization, Hollis underwent psychological

testing by Psychologist Shannon M. Hartley who noted that

although she was not receiving special education services,

Hollis had been placed on the 504 plan[6] (Tr. 270; *see generally*

Tr. 269-75).  Reality testing was adequate while insight was

entirely absent; judgment was fair.  On the Wechsler Adult

Intelligence Scale-Third Edition (hereinafter *WAIS-III*), Hollis

scored a Verbal IQ of 71, a Performance IQ of 69, and a Full

Scale IQ of 67, placing her within the extremely low

---

[4]*Abilify* is a psychotropic drug used in the treatment of
schizophrenia.  **Error! Main Document Only.***Physician's Desk Reference*
872-74 (62nd ed. 2008).

[5]**Error! Main Document Only.**"*Ativan* (lorazepam) is indicated for the
management of anxiety disorders or for the short-term relief of the
symptoms of anxiety or anxiety associated with depressive symptoms."
Its use is not recommended "in patients with a primary depressive
disorder or psychosis."  *Physician's Desk Reference* 2516-17 (48th ed.
1994).

[6]"The 504 Plan is a plan developed to ensure that a child who has
a disability identified under the law and is attending an elementary
or secondary educational institution receives accommodations that will
ensure their academic success and access to the learning environment."
http://www.washington.edu/doit/what-difference-between-iep-and-504-
plan

psychometric range of intelligence.  Hartley's diagnostic
impression was as follows:  Oppositional Defiant Disorder;
Adjustment Disorder with Disturbance of Conduct, Chronic
Stressor; Rule out ADHD; Extremely Low Intellectual Functioning;
Rule out Mild Mental Retardation; and Rule out Fetal Alcohol
Syndrome (Tr. 269).  Plaintiff's discharge diagnosis from Hill
Crest Hospital on June 13, 2008 was Disruptive Disorder, NOS and
ADHD (Tr. 278).

        Plaintiff went to Cahaba Center for Mental Health
(hereinafter *Cahaba CMH*) in June 2008 where goals were made for
her mood and anger control (Tr. 291).  A treatment note from
September 9, 2008 indicated Hollis was feeling good and had no
suicidal or homicidal ideation (Tr. 289).  On February 2, 2009,
Plaintiff was seen for a refill of her medications; she was
doing well in school, having scored A's and B's. (Tr. 288).
Psychiatrist Timothy Baltz's impression was as follows:  (1)
ADHD combined type, partial remission; (2) suspect somewhat past
chaotic home environment; and (3) high/mild MR (Tr. 288).

        The next medical record was from November 1, 2011, when Dr.
Stephen J. Robidoux performed a physical evaluation, stating it
was normal (Tr. 293-96).  The Doctor went on to say that Hollis
had no limitations in "sitting, standing, walking, lifting,
carrying, climbing, squatting, crawling, handling objects, using
hand and foot controls, talking, listening or travel" (Tr. 296).

On November 29, 2011, Psychologist Donald W. Blanton saw
Plaintiff at the request of the Social Security Administration
(hereinafter *SSA*) for a mental examination without testing;
previous records were made available to aid in the evaluation
(Tr. 301-03).  Blanton noted that Hollis "was a simple young
girl who appeared to be mentally retarded who cried several
times during the examination" (Tr. 302).  Thoughts and
conversation were logical and associations were in tact; affect
was flat, but appropriate.  No confusion was noted; her mood was
depressed.  No psychomotor retardation as noted; no delusions or
persecutory type fears were noted, but Plaintiff was very
negative and obsessed about her spells of anxiety.  Hollis was
oriented in four spheres; "intelligence was estimated [to be]
well below average" (Tr. 302).  The Psychologist noted that
Plaintiff's memory was consistent with her intellect; "insight
was limited and judgment was considered fair for work and
financial type decisions" (Tr. 302).  Blanton indicated that
Hollis appeared to be mentally retarded and diagnosed her as
follows:  Major Depression, Panic Disorder without Agoraphobia,
history of ADHD, and Mild Mental Retardation (estimated).

On December 13, 2011, Dr. Harold R. Veits, without benefit
of examining Plaintiff, reviewed the evidence of record as of
that time and determined that she had no severe physical
impairments; he further concluded that, mentally, she had been

diagnosed to suffer from Affective Disorders and Borderline Intellectual Functioning, though she did not meet Listing requirements for either of those impairments (Tr. 65-75). Veits further opined that Hollis had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. The Non-Examiner further suggested that Plaintiff would be moderately limited in her ability to do the following: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting.

On May 9, 2012, Plaintiff was seen at Cahaba CMH, stating that she was having problems with her nerves, was easily frustrated, and was often anxious (Tr. 328-35). On July 20, Hollis received individual therapy; she had been experiencing visual and auditory hallucinations (Tr. 351). On August 10, Cahaba MHC notes indicate that Hollis was anxious, dysphoric, suicidal, and experiencing hallucinations; she was diagnosed to have anxiety and the treatment goal was to stabilize it (Tr. 350, 352).

On September 26, 2012, Psychologist Blanton again examined
Plaintiff, at the request of the SSA, and reported that
Plaintiff had run out of some of her medications, but would not
see her psychiatrist for another couple of weeks (Tr. 305-11).
Hollis was obese, quite anxious, with logical thoughts and
conversation; associations were intact and affect was flat but
appropriate.  There was no psychomotor retardation noted; she
was oriented in four spheres, though insight was limited and
judgment considered poor.  On the WAIS-IV, Plaintiff scored a
Full Scale IQ of 50; however, Blanton noted that Plaintiff had
not been taking her Metadate and that her "extremely short
attention span and her poor concentration [] artificially
lower[ed] the results" (Tr. 307).  The Psychologist noted that
the score placed her in the moderate range of mental
retardation, but he did not think the scores were valid.
Nevertheless, Blanton thought that Hollis fell into the mild
range of mental retardation.  His impression was as follows:
(1) Major depression, recurrent type with psychotic features;
(2) ADHD, mixed type; (3) history of panic disorder without
agoraphobia; and (4) mild mental retardation.  Blanton completed
a mental evaluation form in which he indicated that Plaintiff
had marked limitations in her ability to understand, remember,
and carry out complex instructions and make judgments in complex
work-related decisions (Tr. 309-11).  The Psychologist further

indicated that Hollis would be markedly restricted in interacting appropriately with supervisors and moderately limited in interacting appropriately with coworkers and responding appropriately to changes in a routine work setting. Blanton thought that Hollis had suffered from these limitations for more than one year.

On October 3, 2012, Plaintiff reported to Cahaba CMH that she was having difficulty sleeping and that people were after her/trying to grab her; it was suggested that she might be malingering (Tr. 349).  On October 8, Psychiatrist Baltz reported that Plaintiff admitted to wanting to hurt herself sometimes; the Doctor continued the Ativan and prescribed Prozac[7] (Tr. 347-48).  On November 7, 2012, Hollis's anxiety concerned physical ailments for which she had been exercising or walking briskly (Tr. 346).  On January 7, 2013, Cahaba MHC notes indicated Plaintiff had lost weight and was exercising to combat her anxiety (Tr. 345).  On February 4, the Psychiatrist noted a twenty-pound weight loss; Hollis indicated that she still experienced thoughts of hurting herself and others (Tr. 343-44).

On April 12, 2013, Plaintiff went to the Bryan Whitfield Memorial Hospital Emergency Room, complaining of shortness of breath and weakness for the previous four days (Tr. 356-62).

---

[7]**Error! Main Document Only.***Prozac* is used for the treatment of depression.  *Physician's Desk Reference* 859-60 (52nd ed. 1998).

On May 8, 2013, Blanton again examined Hollis, noting that her thoughts and conversation were simple, but logical; associations were intact and affect was flat (Tr. 363-66).  She was depressed and cried often; Plaintiff was oriented in four spheres, but insight was limited and judgment was only fair.  On the WAIS-IV, Hollis obtained a verbal comprehension score of 63, a perceptual reasoning score of 69, a working memory score of 63, a processing speed score of 68, and a full scale IQ of 60, placing her in the mild mental range of retardation.  The Beck Depression Inventory II placed her in the moderately depressed range.  Blanton thought these results were valid, noting she was functionally illiterate.  The Psychologist went on to find the following:

> Ms. Hollis has marked limitations that
> seriously interfere with her ability to
> perform work-related activities on a day-to-
> day basis in a regular work setting in the
> following areas:  understand detailed or
> complex instructions carry out detailed or
> complex instructions, remember detailed or
> complex instructions, respond a customary
> [sic] work pressure, use judgment in
> detailed or complex work-related decisions,
> maintain attention and concentration and
> pace for appeared [sic] at least two hours.
> It is my opinion that her mental retardation
> is a lifelong condition and her emotional
> problems have been present at this level for
> at least one year.  Ms. Hollis demonstrates
> deficits in adaptive functioning due to her
> mental retardation manifested prior to age
> 22 in the following areas:  communication,
> social interpersonal skills, work,

11

functional academic skills.

(Tr. 364-65).  This concludes the relevant evidence of record.

In bringing this action, Plaintiff makes two claims:  (1) the ALJ improperly considered the opinions and conclusions of the examining psychologists; and (2) she meets the requirements of Listing 12.05C (Docs. 12, 15).  As noted by Defendant, these arguments are closely related (Doc. 13, p. 7), so the Court will address them together.

Hollis claims that she meets the requirements for Listing 12.05C.  The introductory notes to Section 12.05 state that "[i]ntellectual disability refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2015).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2015).

The evidence shows that on June 3, 2002, two months shy of her twelfth birthday, Plaintiff took the WISC-III and scored a verbal IQ of 70 and a performance IQ of 50 (Tr. 312-13).  A

12

month later, she took the WIAT-II and scored 72 on reading, 68

on mathematics, 74 on oral language, and 57 in written language

(Tr. 312, 314-15).  During June 2008, Plaintiff took the WAIS-

III and scored a Verbal IQ of 71, a Performance IQ of 69, and a

Full Scale IQ of 67 (Tr. 272).  On May 8, 2013, Hollis took the

WAIS-IV and obtained a verbal comprehension score of 63, a

perceptual reasoning score of 69, a working memory score of 63,

a processing speed score of 68, and a full scale IQ of 60 (Tr.

366).

The Court finds that these test scores clearly fall within

the Listing requirements of Listing 12.05C.

In his determination, the ALJ found that Hollis had severe

impairments that included obesity and gastroesophageal reflux

disease (Tr. 20).  The Eleventh Circuit Court of Appeals has

held that "[a]n impairment can be considered as not severe only

if it is a slight abnormality which has such a minimal effect on

the individual that it would not be expected to interfere with

the individual's ability to work, irrespective of age,

education, or work experience."  *Brady v. Heckler*, 724 F.2d 914,

920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir.

1985); *cf.* 20 C.F.R. § 404.1521(a) (2015).[8]  The Court of Appeals

has gone on to say that "[t]he 'severity' of a medically

_____

[8]"An impairment or combination of impairments is not severe if it
does not significantly limit your physical or mental ability to do
basic work activities."

ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  It is also noted that, under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."  Finally, the Court notes that the Eleventh Circuit Court of Appeals held that the second prong of 12.05C is met when a finding is made that a claimant had an additional severe impairment, holding that "significant work-related limitation of function" "involves something more than 'minimal' but less than 'severe.'"  *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).

The Court finds that the ALJ's conclusion that Hollis had additional severe impairments meets the requirement of Listing 12.05C.

The Court notes that although the regulations require that Plaintiff demonstrate she suffered "deficits in adaptive functioning" before she turned twenty-two, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2015), the Eleventh Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), has held "that there is a presumption that

mental retardation is a condition that remains constant throughout life." The *Hodges* Court further held "that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." *Hodges*, 276 F.3d at 1266. However, the presumption is rebuttable. *Hodges*, 276 F.3d at 1267.

The Court finds evidence in this record of testing scores within the required range of Listing 12.05C well before Hollis turned twenty-two years of age. This satisfies *Hodges*.

The Court further notes that, following three different evaluations, Psychologist Blanton indicated his belief that Plaintiff was mentally retarded; his most recent evaluation included objective testing supporting that conclusion (Tr. 302-03, 308, 364-65). The evidence of record supports a conclusion that Plaintiff meets the requirements of Listing 12.05C. However, that presumption is rebuttable.

In his determination, the ALJ discounted Blanton's opinions as "not consistent with the record as a whole nor fully supported by objective signs, symptoms and objective findings" (Tr. 29). In his rejection, the ALJ stated as follows: "I do not in this case find any 'smoking gun' or 'magic bullet' theory to conclusively refute beyond all possible doubt Dr. Blanton's apparent findings that the claimant is mentally retarded and has

15

disabling mental functional restrictions" (Tr. 29).

The Court reminds the ALJ that it was not his duty to "refute beyond all possible doubt" Blanton's conclusions, though he tried to do so by relying on Dr. Veits, a Non-Examiner who reviewed less than half of the submitted medical exhibits and less than half of all of the medical evidence in this record (Tr. 30).  The ALJ also called Psychologist Tocci to testify at the hearing in spite of the fact that she never personally examined Plaintiff, giving her opinions based on her observations at the hearing and the evidence available at that time (Tr. 30; *cf*. Tr. 48-56).[9]  At the hearing, Tocci reviewed various test results scored by Hollis and expressed the opinion that she suffered from borderline intellectual functioning (Tr. 52, 54-55).

The Court notes that Tocci's testimony failed to reference Psychologist Blanton's diagnoses of mental retardation, though she did acknowledge that Hollis's test scores fell within the mental retardation range (Tr. 55).

The Court does not find substantial support in the ALJ's reliance on the conclusions of Veits and Tocci.  Veits made conclusions based on less than half of the evidence of record.  Tocci failed to acknowledge the evidence contrary to her own

---

[9]Blanton's final exam would appear to be the only evidence not yet in the record at the time of the hearing.

conclusions.  The ALJ did not recognize these problems and pointed to nothing to balance the shortcomings.  At the most fundamental level, though, the ALJ failed to even acknowledge that Plaintiff, at least on the face of it, satisfied the requirements of Listing 12.05C.  These failures do not constitute substantial evidence for the ALJ's conclusions.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing to determine if Plaintiff meets the requirements of Listing 12.05C.  Judgment will be entered by separate Order.

DONE this 11th day of January, 2016.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE